**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE**

**CIVIL ACTION NO. 04-405-DLB**

**HAZEL STOOKSBURY**                                                               **PLAINTIFF**

vs.                    **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                           **DEFENDANT**

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Hazel Stooksbury filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments on September 16, 2002.[1] (Tr. 279-81, 704-06). Plaintiff, who was 46 years old at the time of the hearing, has a high school education and attended community college for one year. (Tr. 44-45). She alleges disability beginning on November 1, 2001, due to major depression, anxiety, and chronic hip pain. (Tr. 301).

---

[1] Plaintiff filed prior DIB and SSI applications in mid-1998, alleging an onset date of March 1998. Her applications were denied initially and upon reconsideration. She requested an administrative hearing, which was conducted in June 1999. The ALJ issued a written decision on July 27, 1999, finding that Plaintiff was not disabled. On March 27, 2001, the Appeals Council denied further review of the ALJ's decision. No further action was taken on that claim.

Plaintiff's applications were denied initially (tr. 254-57, 708-11) and upon reconsideration (tr. 264-66, 713-15). She then requested a hearing before an administrative law judge (ALJ), which was held on May 14, 2004, in Prestonsburg, Kentucky. (Tr. 36-79). By written decision dated June 25, 2004, the ALJ ruled that Plaintiff was not disabled, and was ineligible for DIB or SSI payments. (Tr. 20-29). This decision was approved by the Appeals Council on September 17, 2004. (Tr. 9).

The instant action was filed on November 12, 2004. The matter has now culminated in cross motions for summary judgment.

## II. DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments, or combination thereof, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any relevant time. (Tr. 24). At Steps 2 and 3, the ALJ found that Plaintiff's major depression, personality disorder, obesity, and osteoarthritis constitute severe impairments. (*Id.*) The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment found in Appendix 1 to Subpart P of Regulations No. 4. (*Id.*).

At Step 4, the ALJ found that Plaintiff had the physical residual functional capacity (RFC) to lift/carry up to 20 pounds occasionally, 10 pounds frequently, and to push/pull within these same weight limits; sit, stand, and/or walk up to 6 hours for each of these tasks during an 8-hour day; occasionally balance, stoop, kneel, crouch, or crawl; and frequently climb, reach, handle, finger, and feel. With respect to her mental impairments, the ALJ found that Plaintiff has mild reduction in concentration, is restricted to simple job tasks, and must avoid frequent interaction with others on the job. (Tr. 26). Based upon these findings, the ALJ determined that Plaintiff was unable to perform her past relevant work as a customer sales representative, sales clerk, or nursing assistant. (*Id.*).

The ALJ, therefore, proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there are light and sedentary jobs existing in significant numbers in the national economy that Plaintiff could perform, including clerical work and laundry work at the light exertion level, and clerical work and packaging jobs at the sedentary exertion level. (Tr. 27). This conclusion resulted from testimony by a vocational expert ("VE"), in response to hypothetical questions assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC. (Tr. 71-73).

**C.    Analysis**

Plaintiff makes two related arguments on appeal. First, she argues that the ALJ failed to give controlling weight to the opinion of Dr. Eric Johnson, who she claims is a treating source. Second, Plaintiff argues that the ALJ erred in failing to find that her mental impairments meet or equal the following listings: 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders). In response, the Commissioner argues that the ALJ properly rejected Dr. Johnson's functional capacity assessment because repeated objective testing indicated that Plaintiff grossly overstated her symptoms during the exam. Moreover, the Commissioner argues that, despite her general allegation that she meets/equals an array of listings, Plaintiff has failed to present evidence establishing presumptive disability. For the reasons that follow, the Court finds that Plaintiff's alleged errors are without merit.

As an initial matter, the Court rejects Plaintiff's assertion that Dr. Eric Johnson qualifies as a treating source. To the contrary, the record clearly establishes that Dr. Johnson performed a one-time consultative psychological examination of Plaintiff on March

4

25, 2004.[2]  As discussed by the ALJ in her written decision, Plaintiff underwent two such psychological examinations - one by Dr. Wayne Edwards, and one by Dr. Johnson (at the request of her attorney).  Dr. Edwards examined Plaintiff on June 18, 2003.  (Tr. 530).  He observed that she was pleasant and cooperative, appropriately dressed, and clean.  (Tr. 532).   Dr. Edwards diagnosed nicotine dependency, mood disorder (not otherwise specified) and personality cluster B traits, and noted a Global Assessment Functioning (GAF) score of 65.  Dr. Edwards opined that:

> The patient appeared to be able to perform simple, repetitive tasks.  She is able to ask simple questions and ask for assistance.  She had appropriate understanding and remembering capabilities, in order to follow one to two-step simple commands.  The patient's concentration and persistence were congruent with [her] level of education, but had difficulties with mathematical skills.  She appeared to be to work without special supervision, identified normal hazards, and took appropriate precautions.  She demonstrated an ability to adapt to changes in a day-to-day work setting without significant impairment.

(Tr. 535).

Approximately one year later, Dr. Johnson diagnosed Plaintiff with major depression (severe, recurrent), post traumatic stress disorder, panic disorder with agoraphobia, and borderline personality traits, and noted a GAF score of 50.  (Tr. 628).  He also noted that on the MMPI-2, Plaintiff overstated her symptoms to a "remarkable degree."  (Tr. 628).  Nevertheless, he offered the following prognosis:

> This person has had significant psychiatric problems at least for ten years, although she was also abused as a child and had problems at that time.  She has been in therapy off and on and has had several inpatient stays.  She still has serious symptoms despite psychiatric intervention, and therefore her prognosis for significant change is judged to be guarded.  She has a limited work history, and the last two jobs she had were very brief and she could not

---

[2]He confirmed his initial findings in a follow-up letter on May 20, 2004.  (Tr. 703).

5

> continue with those because she could not deal with the pressure. She would have problems in a work setting because of the depression and especially the panic episodes. She would have difficulty on a day-to-day basis with memory and concentration. She is emotionally unstable and probably socially unpredictable at times. She would have difficulty understanding and carrying out detailed and complex instructions on a daily basis because of her psychiatric symptoms, but not because of intellectual functioning. She would do better with simple instructions. Her judgment is apt to be impaired.

(Tr. 628-29). Dr. Johnson also supplied a mental residual functional capacity assessment, stating that she had a good ability to maintain her personal appearance; fair ability to follow work rules, deal with the public, and understand, remember, and carry out simple job instructions; and poor ability to relate with co-workers, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention/concentration, understand, remember, and carry out complex and detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (Tr. 630-31).

The ALJ considered both of these opinions, but expressed doubt about the reliability of Dr. Johnson's findings. The ALJ acknowledged receipt of a follow-up letter from Dr. Johnson confirming his initial findings, but commented that "[h]is letter did not explain, however, how his assessment that the claimant had poor ability to maintain work activity could be concluded from testing that showed the claimant was overstating her impairments." (Tr. 24). She, therefore, gave greater weight to Dr. Edwards' opinion, which she concluded was well-supported by objective medical evidence and consistent with the overall record. (Tr. 24). Under these circumstances, and given the ALJ's extensive discussion of both opinions, the Court finds Plaintiff's first argument without merit.

The Court now turns to what it deems Plaintiff's primary argument, that is, that the ALJ erred in failing to find that her mental impairments meet or equal several listings. The Court will address the requirements of each listing (and the pertinent medical evidence) in turn. Plaintiff first argues that she meets the requirements of Listing 12.04 (affective disorders). In support, she maintains that she satisfies the "A" criteria because she has exhibited the following clinical findings: loss of interest, bi-polar disorder, appetite disturbance with change in weight, sleep disturbance, decreased energy, difficulty thinking, thoughts of suicide, and hallucinations. (Doc. #12, pp. 26-27). She further states that she satisfies the "B" criteria because she has "marked" restrictions of daily living, "marked" difficulties maintaining social functioning, "marked" difficulties maintaining concentration and attention, and repeated episodes of decompensation. (Doc. #12, p. 27).

Alternatively, Plaintiff argues that she satisfies the "C" criteria because she has a medically-documented history of a chronic affective disorder of at least two years' duration, that has caused more than a minimal limitation of ability to do basic work activities with symptoms and signs currently attenuated by medication and psychosocial support. (*Id*.).[3] In support, Plaintiff cites generally to treatment she received at: Sweetwater Clinic, Peninsula Behavior Outpatient Services, Mountain Comprehensive Care Center, Appalachian Regional Healthcare Psychiatric Center, and Shelby Valley Clinic, as well as the RFC assessments of Drs. Johnson and Warren.[4]

---

[3]The Court notes that in her memorandum, Plaintiff merely recites the listing requirements.

[4]The Court notes that Dr. Brian Warren performed a psychological evaluation of Plaintiff on August 5, 2004, over one month after the ALJ issued her written decision. (Tr. 767-72). The ALJ also rejected the assessment of Dr. Johnson for the reasons discussed above.

7

The required level of severity for affective disorders under Listing 12.04 is met when both the "A" and "B" criteria are satisfied, or when the "C" criteria are satisfied. Even accepting as true Plaintiff's allegation that she satisfies the "A" criteria, the evidence does not establish the degree of functional limitation(s) required under the "B" criteria. In fact, the state agency psychologists opined that Plaintiff experiences only "mild" restriction of activities of daily living, "mild" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence, or pace, and has had only one or two episodes of decompensation. (Tr. 518, 552). Moreover, Dr. Edwards opined that Plaintiff can perform normal daily activities (chores, errands, etc.), she gets along with her family and friends, and although she reported some difficulty getting along with supervisors and co-workers, she is able to make decisions and maintain attendance. (Tr. 534). Based upon this evidence, the Court is unable to conclude that Plaintiff's impairment(s) meets or equals the "A" and "B" criteria of Listing 12.04.

The Court also concludes that Plaintiff does not meet the "C" criteria, which by themselves establish the requisite severity. Although Plaintiff alleges that she suffers from a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support ...," the "C" criteria also require proof of one of the following: 1) repeated episodes of decompensation, each of extended duration; or 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3) a current history of 1 or more years' inability to function outside a highly supportive living

8

arrangement, with an indication of continued need for such an arrangement. Absent such proof, the Court is unable to conclude that Plaintiff's impairment(s) meets or equals Listing 12.04C. *See Evans v. Sec'y of Health and Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987) (noting that when a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment, or present medical evidence which describes how the impairment has such equivalency).

The required level of severity for anxiety-related disorders under Listing 12.06 is met when the requirements in both "A" and "B"[5] are satisfied, or when the requirements in both "A" and "C" are satisfied. The "A" criteria require medically documented findings of at least one of the following: 1) generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectation, or vigilance and scanning;[6] 2) a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; 3) recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; 4) recurrent obsessions or compulsions which are a source of marked distress; or 5) recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

In this case, Plaintiff reported panic attacks multiple times per week, as well as difficulty dealing with prior sexual and emotional abuse, to Dr. Johnson. (Tr. 624-29). Dr.

---

[5] The "B" criteria are the same as those for Listing 12.04.

[6] Three of these four symptoms must be present.

9

Johnson also diagnosed Plaintiff with panic disorder with agoraphobia. (Tr. 628). However, even accepting that this evidence satisfies the "A" criteria, the Court must conclude, as it did above, that the "B" criteria are not satisfied. Therefore, in order to meet or equal the requirements of Listing 12.06, Plaintiff must establish that her symptoms result in a complete inability to function independently outside the area of her home under the "C" criteria.[7] In that regard, Plaintiff testified at the hearing that she is unable to leave her home several times each month due to panic and anxiety. (Tr. 66-67). However, she also reported going to the store with a friend, as well as to the library to use the Internet. (Tr. 626). Under these circumstances, the Court is unable to conclude that Plaintiff's impairment(s) meets or equals Listing 12.06.

Finally, Plaintiff argues that she satisfies the requirements of Listing 12.08 (personality disorders). Under that listing:

> A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.

The required level of severity for these disorders is met when the requirements in both "A" and "B" are satisfied.[8] The "A" criteria require "[d]eeply ingrained, maladaptive patterns of behavior associated with one of the following: 1) seclusiveness or autistic thinking, 2) pathologically inappropriate suspiciousness or hostility, 3) oddities of thought, perception,

---

[7]The Court notes that, in her motion, Plaintiff does not cite to any specific evidence in support of her arguments that she satisfies Listings 12.06 and 12.08. Rather, she merely states that the evidence cited above (with respect to her Listing 12.04 argument) also establishes that these listings are met as well. (Doc. #12, p. 28).

[8]The "B" criteria are the same as those for Listings 12.04 and 12.06.

10

speech and behavior, 4) persistent disturbances of mood or affect, 5) pathological dependence, passivity, or aggressivity, or 6) intense and unstable interpersonal relationships and impulsive and damaging behavior.  Plaintiff has failed to offer, and the Court has been unable to locate, any evidence that the "A" criteria are satisfied.  Moreover, the Court has already determined that the requirements of the "B" criteria are not met.  For these reasons, the Court finds Plaintiff's final listing argument equally unavailing.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #12) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #15) is hereby **GRANTED**.

A judgment affirming this matter will be entered contemporaneously herewith.

Dated this 22nd day of March, 2006.



G:\DATA\SocialSecurity\MOOs\7-04-405-StooksburyMOO.wpd